## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DANYELLE TYLER,** *individually and on behalf of her deceased mother,* **JEANNE COOLEY,** | ) ) ) ) |
| **GRANT COOLEY,** *individually and on behalf of her deceased mother,* **JEANNE COOLEY,** | ) ) ) ) ) |
| **PAULA KELLY,** *individually and on behalf of her deceased mother,* **JEANNE COOLEY,** | ) ) ) ) ) |
| **KIMBERLY COOLEY- WILSON,** *individually and on behalf of her deceased mother,* **JEANNE COOLEY,** | ) ) ) ) ) |
| **SHANNON COOLEY- JACKSON,** *individually and on behalf of her deceased mother,* **JEANNE COOLEY,** | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **ST. ELIZABETH'S HOSPITAL OF THE THIRD ORDER OF ST. FRANCIS,** *d/b/a* **ST. ELIZABETH'S HOSPITAL,** | ) ) ) ) |
| Defendant. | ) ) |

CASE NO. 18-CV-1179

JURY TRIAL DEMANDED

SERVE DEFENDANT AT:
J. Nicole Lewer-Holst
224 W. Garfield
Belleville IL, 62220

### COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

COMES NOW Plaintiffs Danyelle Tyler, Grant Cooley, Paula Kelly, Kimberly Cooley-Wilson, and Shannon Cooley-Wilson, individually and on behalf of their deceased mother, Jeanne Cooley, and hereby bring this Complaint for Wrongful Death against Defendant St. Elizabeth's

1

Hospital of the Third Order of St. Francis, *d/b/a* St. Elizabeth's Hospital, and allege as follows:

### Parties, Venue, Jurisdiction & Timeliness

1. Plaintiffs Danyelle Tyler, Grant Cooley, Paula Kelly, Kimberly Cooley-Wilson, and Shannon Cooley-Wilson ("Plaintiffs") are the biological children of Jeanne Cooley.

2. Lead Plaintiff Danyelle Tyler is a citizen and resident of Missouri.

3. Co-plaintiff Grant Cooley is a citizen and resident of Texas.

4. Co-plaintiff Paula Kelly is a citizen and resident of North Carolina.

5. Co-plaintiff Kimberly Cooley-Wilson is a citizen and resident of Virginia.

6. Co-plaintiff Shannon Cooley-Wilson is a citizen and resident of Texas.

7. Jeanne Cooley ("Cooley" or "Decedent") was, at all times material hereto, an individual residing in Missouri, at 4961 Highway N., Robertsville, MO 63072.

8. Cooley died on May 30, 2015, in Missouri, as a result of negligently undetected colon cancer.

9. Pursuant to Cooley's official Certification of Death, her Residence Address at the time of death was 4961 Highway N., Robertsville, Missouri, and the listed cause of death is "colon cancer."

10. Plaintiffs bring this action under Mo. Rev. 537.080, the Missouri wrongful death statute; although this lawsuit was filed in a federal court located in Illinois due to Defendant's location, the Decedent was at all times a citizen and resident of Missouri and, most importantly, was a citizen of Missouri at the time of her death – making Missouri's, rather than Illinois', wrongful death statute controlling.

11. Plaintiffs are members of the class of individuals authorized to pursue a wrongful death claim pursuant to Mo. Rev. 537.080(1).

12. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis, *d/b/a* St. Elizabeth's Hospital ("St. Elizabeth's," or "Defendant") is a not-for-profit with its principal place of business located at 1 St. Elizabeth's Blvd., O'Fallon, IL 62269.  It can be served through its

registered agent, J Nicole Lewer-Holst, 224 W. Garfield, Belleville IL, 62220.

13. Venue in this Court is proper in that Defendant is a citizen of Illinois and located within this judicial district.

14. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists; Defendant is an Illinois citizen and no Plaintiff is an Illinois citizen.

15. This action is timely because: (a) the Missouri wrongful death statute, Mo. Rev. 537.080, applies to this cause of action due to the fact that Decedent was a citizen and resident of Missouri at the time she passed away as a result of the medical negligence complained of herein; (b) pursuant to Mo. Rev. 537.080, an action must be brought within three years of the Decedent's date of death, May 30, 2015; and (c) in addition to be being brought within three years of the Decedent's date of death, this action was previously filed in Missouri State court and voluntarily dismissed without prejudice on April 26, 2018; pursuant to Missouri's "savings" statute, Mo. Rev. 516.230, Plaintiff may re-file this action within one year of the voluntary dismissal, on or before April 26, 2019.  Thus, by every measure, Plaintiffs' claims are timely.

## Facts Applicable to All Claims

16. On July 23, 2014, Plaintiff Danyelle Tyler noticed a moistness on the back of Cooley's legs and called Cooley's primary care doctor, a Dr. Lawrence Gibbs at a military clinic in Belleville, Illinois.  Tyler was instructed to bring Cooley into the clinic the following morning, which she did.

17. On July 24, 2014, Gibbs examined Cooley and informed Tyler that Cooley's legs were "weeping," and instructed Tyler to immediately take Cooley to the emergency room at St. Elizabeth's, across the street from the military clinic, also in Belleville, Illinois.

18. Cooley was seen by Dr. Ricardo Garchitorena in the emergency room of St. Elizabeth's.

19. Dr. Garchitorena advised that Cooley was severely anemic and that her hemoglobin levels

were much lower than normal.

20. Cooley was then admitted into St. Elizabeth's to be given blood and to have her progress monitored.

21. Tyler was asked if Cooley had any blood in her stool or had been spitting and/or coughing up blood, to which Tyler explained that Cooley did not show any of these signs nor did Cooley show any signs of blood loss; Tyler did advise, however, that Cooley had been tired.

22. Cooley underwent a culture of her stool; although the test reportedly was not accurate as Cooley had been taking iron pills, the test showed no visible blood.

23. On July 25, 2014, Cooley was given another blood transfusion and received frozen plasma in procedures performed by Dr. Marjorie Guthrie.

24. Cooley's hemoglobin levels remained below normal.

### The July 29, 2014 Colonoscopy Procedure at St. Elizabeth's

25. Around July 25 or 26, 2014, Cooley was referred to the Gastroenterology division at St. Elizabeth's to discuss with Dr. Mark Feldman a procedure that she would undergo on July 29, 2014: an upper and lower endoscopy of the colon (the "Colonoscopy Procedure") to determine the source of her symptoms.

26. Cooley had never previous underwent a colonoscopy.

27. On July 29, 2014, Cooley underwent the Colonoscopy Procedure in which the following reportedly occurred, according to her medical records:

   a. An upper endoscope was passed into the 3rd portion of Cooley's duodenum and, at the junction of the duodenal bulb and the 2nd portion in the apex, a bleeding and minor trauma was discovered and cauterized;

   b. It was also discovered that there was minor duodenitis, erythema, and erosions;

   c. It was discovered that the pylorus, antrum, angular, fundus, body, and cardia were

4

      normal;

    d. It was discovered that the esophagus was normal;

    e. Antral biopsies were taken to rule out the presence of helicobacter;

    f. A colonoscope *purportedly* was advanced into and through the cecum, reportedly revealing an 8mm polyp in the distal ascending colon and another 8mm polyp in the proximal transverse colon; both polyps were removed and submitted together to the St. Elizabeth's Pathology department;

    g. No other abnormalities were reported present from the cecum to the rectum; and

    h. Neither Fentanyl nor Demerol were given during this procedure in order to maximize visualization of the vasculature.

28. Following the Colonoscopy Procedure, Dr. Feldman reported that Cooley was experiencing gastrointestinal bleeding, and had a single angiodysplastic that Dr. Feldman reportedly observed in the 2nd portion of Cooley's duodenum.

29. Dr. Feldman never obtained or produced photo-documentation of his reaching Cooley's cecum during the procedure.

30. Dr. Feldman's plan, therefore, was to follow through with Cooley as an outpatient, track Cooley's hemoglobin carefully, and restart Cooley's prescription of Coumadin.

31. Dr. Feldman reported that the he did not find anything that would cause so much blood loss in Cooley.

32. However, Dr. Feldman did suggest to Tyler and to Cooley that he perform a capsule study that he could complete in the Hospital, purportedly to evaluate the parts of the small bowels that he could not see during the procedure; Cooley, however, could not afford the out-of-pocket cost for the capsule study procedure at that time.

33. On July 29, 2014, Cooley was discharged and told to follow up with Dr. Gibbs, her primary

care provider.

### Cooley's Second Admission to St. Elizabeth's

34. On October 24, 2014, Cooley was taken back to St. Elizabeth's by Tyler for weakness and swollen legs.

35. Cooley then saw Dr. Kristy Waeltz, who discovered that Cooley's hemoglobin was again low.

36. Dr. Waeltz ordered a stomach scan and asked Cooley if she had an appendix, to which Cooley responded that it was removed in 1960.

37. Cooley was admitted into St. Elizabeth's to receive another blood transfusion.

38. While at St. Elizabeth's for her second admission, Dr. Feldman came to talk to Cooley again about the capsule study; this time Cooley agreed to order the study.

39. However, to Cooley's surprise, Dr. Feldman returned shortly thereafter to inform Cooley that the machine used to facilitate the study was inoperative.

40. Instead, Feldman completed a red blood cell tag procedure in the Nuclear Department of St. Elizabeth's; the test results were inconclusive, reportedly because Cooley's bleeding was not continuous.

41. Cooley was thereby diagnosed with colitis, pursuant to which she completely changed her diet, discontinued use of Warfarin and Coumadin, and was put on Xarelto and Ciprofloxacin to aid an apparent stomach infection.

42. On October 27, 2014, Cooley was discharged after her hemoglobin numbers had risen to what was considered a safer level.

### Cooley's Third Admission to St. Elizabeth's

43. On December 9, 2014, Cooley was again taken to St. Elizabeth's due to weakness and was admitted into the Hospital for a blood transfusion.

44. Cooley was seen by Dr. Shakeel Adhmed in the Gastroenterology Center for GI Health, who also encouraged the same capsule study Dr. Feldman had recommended – but then had been unable to perform – as Cooley was, in Dr. Adhmed's opinion, probably losing blood very slowly.

45. Cooley was given blood again and was discharged when her hemoglobin levels were safe.

### Cooley's Fourth Admission to St. Elizabeth's

46. On December 30, 2014, Cooley was taken to St. Elizabeth's due to lethargy and was admitted to be given blood as her hemoglobin levels were, again, much lower than normal.

47. On January 1, 2015, Dr. Feldman came to see Cooley in her room.

48. Cooley asked if the machine for the capsule study was working then and Feldman, surprisingly, said that it was not, *but he could not fix any issues anyway even if a problem was found*.

49. Dr. Feldman ordered that Cooley be sent to a hospital that could perform a scope procedure to evaluate what was occurring.

50. Cooley questioned why Dr. Feldman - and others - had repeatedly encouraged the capsule study if the results would not have led to solutions; Dr. Feldman provided no clear answer.

51. Dr. Feldman then initiated a hospital transfer, and a social worker arranged for Cooley to be sent to Barnes Jewish Hospital in St. Louis, Missouri, via ambulance.

### Cooley's First Admission to Barnes Jewish Hospital

52. Cooley's principle and secondary diagnoses upon transfer were for melena, or dark blood in her stool, and acute respiratory distress, colon perforation, oliguria, and pleural effusion.

53. On January 2, 2015, while undergoing an initial evaluation, Cooley's attending doctor gently pushed on the right side of Cooley's stomach.

54. The gentle push caused Cooley to experience tremendous pain, alarming her and the doctor.

55. The attending doctor called Dr. Matthew Mutch, a colon and rectal surgeon, who explained that Cooley had to undergo an immediate hemicolectomy as he believed her colon was perforated.

56. The surgery was successful and the following occurred:

    a. a perforation in Cooley's colon was discovered;

    b. 16 inches of the colon was removed;

    c. **<u>a 10 mm mass was removed from the cecum</u>**; and

    d. 5 out of 12 lymph nodes tested positive for cancer.

57. As such, Dr. Mutch suggested that the issue Cooley had been suffering from all along was colon cancer, pointing out that the 10mm mass removed from the cecum was cancerous.

58. Dr. Mutch and other examining doctors also declared and agreed that there was "no way" such a mass could have been missed during Cooley's July 29, 2014 Colonoscopy Procedure conducted at St. Elizabeth's by Dr. Feldman.

59. Dr. Mutch asserted that Cooley needed to be in a care facility to attempt to recover.

60. Yet Cooley never did recover from her colon cancer, and instead steadily continued to deteriorate in health until her death.

### *Cooley's Rapid Deterioration Following Her Cancer Diagnosis*

61. On January 9, 2015, Cooley was discharged from Barnes Jewish Hospital and was taken to Delmar Gardens Rehab Facility to begin her rehabilitation program.

62. On January 25, 2015, Cooley was admitted into Barnes Jewish Hospital for confusion.

63. On January 28, 2015, Cooley underwent an upper gastrointestinal endoscopy, in which esophageal mucosal changes for short-segment Barrett's Esophagus was found. In addition, two tongues of salmon-colored mucosa were discovered.

64. On February 15, 2015, Cooley was admitted to Barnes Jewish Hospital for a UTI infection; it was discovered that her hemoglobin levels again were low.

65. Cooley was put in the Cancer Center Ward of Barnes Jewish Hospital to evaluate Cooley's stomach incision and to treat her massive infection.

66. At this time, Cooley had stage 3B Medullary colon cancer, a highly aggressive form of cancer.

67. On February 24, 2015, after a fall, Cooley was admitted to Mercy Hospital (Washington, Missouri).

68. Mercy Hospital doctors listened to Cooley's lungs and suggested that there was fluid inside of them.

69. On March 12, 2015, Cooley had her first oncology appointment with Dr. Eric Knoche at Siteman Cancer Center (St. Louis, Missouri).

70. At this appointment, Cooley and Dr. Knoche discussed Cooley's July 2014 Colonoscopy Procedure and Cooley asked how the cancerous mass could have been missed.

71. Dr. Knoche, in agreement with Cooley's other doctors' earlier comments, stated that there was "no way" it should have been overlooked, save egregious error and negligence, especially if Dr. Feldman had led his scope through Cooley's cecum as he reported that he had.

**Cooley's Final Admission to St. Elizabeth's**

72. On May 21, 2015, Cooley began experiencing excruciating pain; despite Cooley's prior experience with St. Elizabeth's in which its doctors missed her cancerous mass, she returned to St. Elizabeth's, having no other viable option at the time.

73. The doctors at St. Elizabeth's ordered a scan of Cooley's stomach to understand why she was experiencing such pain; her colon cancer was found to have spread throughout her entire stomach.

74. Cooley was transported via ambulance to Barnes Jewish Hospital to be admitted into the cancer ward and given morphine to make her comfortable.

**Cooley's Wrongful Death**

75. Cooley's family decided to discharge Cooley from Barnes Jewish Hospital in order to take

care of her at home.

76. On May 30, 2015, Cooley passed away; her cause of death being cancer of the colon.

77. According to numerous treating physicians, the cancerous mass that ultimately burst and caused cancer to spread throughout Cooley's midsection could have been isolated and removed if it had been identified earlier.

78. As a result of the St. Elizabeth's medical practitioners' failure to discover the cancerous mass in Cooley's cecum during the July 29, 2014 Colonoscopy Procedure, as set forth in detail herein, Cooley suffered or was caused to suffer physically and emotionally painful injuries and ultimately her wrongful death.

79. Plaintiffs herein have been, and in the future will be, deprived of Cooley's consortium, companionship, comfort, instruction, guidance, counsel, and support. As a further result of said fault, Plaintiffs incurred medical, funeral, and burial expenses for injuries to and the wrongful death of Jeanne Cooley.

## Count I: Wrongful Death

80. The facts and allegations contained in the paragraphs above are incorporated herein by reference.

81. Plaintiffs are the lawful children of Cooley.

82. Cooley's injuries, death, and damages resulted in whole or in part from Defendant's affirmative negligent acts that purposely and dangerously caused or increased the risk of injury to Cooley in one or more of the following particulars set out herein.

83. In particular, Defendant breached its duty of care to Cooley, and purposely and dangerously caused or increased the risk of injury to Cooley, in failing to discover a cancerous mass during the July 29, 2014 Colonoscopy Procedure that could not have possibly been missed had Defendant used reasonable care.

84. The affirmative negligent acts of Defendant were a direct and proximate cause of the injuries and death suffered by Jeanne Cooley.

85. Plaintiff is thus entitled to recover fair and reasonable damages for the pecuniary losses suffered by reason of Jeanne Cooley's death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support, and for such damages as the deceased suffered between the time of injury and time of death and for the recovery of which the decedent would have maintained an action had she lived.

86. Plaintiffs bring in this action in a timely manner, within three years of the date of Cooley's death, on May 30, 2015.

WHEREFORE, Plaintiffs pray for judgment against Defendant on Count I for fair and reasonable damages, for prejudgment interest, for punitive damages, for their costs and for such other relief as is just and proper.

### Count II: Healthcare Provider Malpractice

87. The facts and allegations contained in the paragraphs above are incorporated herein by reference.

88. Defendant owed to Cooley and to Plaintiffs a duty to exercise reasonable care when performing the July 29, 2014 Colonoscopy Procedure and otherwise examining Cooley to determine the source of her maladies when admitted at St. Elizabeth's.

89. Defendant was negligent in that it breached the aforesaid duty, and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendant's profession in that Defendant failed to discover a cancerous mass during the July 29, 2014 Colonoscopy Procedure that could not have possibly been missed had Defendant used reasonable care.

90. As a direct and proximate result of the negligent acts set forth above, Cooley suffered pain,

difficulty in rehabilitation, was required to obtain and seek additional medical and nursing care for treatment of the same and incurred reasonable and necessary expenses of said care to treat the aforementioned conditions, and ultimately died as a result of Defendant's negligence in failing to obtain photo-documentation of reaching Cooley's cecum and consequently failing to discover the cancerous mass in her cecum.

91. Defendant's failure to discover the cancerous mass while conducting the Colonoscopy Procedure constituted gross negligence in that Defendant was wanton and reckless and did not even obtain or produce photo-documentation of Dr. Feldman reportedly reaching the cecum during the Colonoscopy Procedure.

WHEREFORE, Plaintiffs pray for judgment against Defendant on Count II for fair and reasonable damages, for prejudgment interest, for punitive damages, for their costs and for such other relief as is just and proper.

## Count III: Negligent Misrepresentation

92. The facts and allegations contained in the paragraphs above are incorporated herein by reference.

93. Defendant, as the healthcare provider for Cooley's July 29, 2014 Colonoscopy Procedure, made false representations, as previously set forth herein, to Cooley and to the Plaintiffs that include, but are not limited to, the misrepresentation that during the July 29, 2014 Colonoscopy Procedure a colonoscope was "advanced into the cecum," which could not have been true given that Defendant could not have possibly missed the cancerous mass that was later discovered by other healthcare providers and as exhibited by the fact Defendant failed to obtain and produce photodocumentation of having reached the cecum.

94. Defendant made the foregoing misrepresentations without any reasonable ground for believing them to be true.

95. The foregoing representations by Defendant were in fact false in that the cancerous mass that was later found could not have increased so much in size in such a short amount of time, such that it must have been present during the Colonoscopy Procedure, yet was undetected due to the fact Defendant did not reach the cecum.

96. In reliance on the misrepresentations by Defendant, Cooley was induced to continue with ineffective treatment for her actual condition. If Cooley and/or Plaintiff had known of the true facts and the facts concealed by Defendant, they would have began treatment for Cooley's condition immediately, including the removal of the cancerous mass in her cecum thus avoiding the spread of colon cancer, substantially prolonging her natural life.

97. Cooley's and Plaintiffs' reliance upon Defendant's misrepresentations were justified because such misrepresentations were made and conducted by individuals that were in a position to know true facts, whereas Cooley and Plaintiffs were not in such a position.

98. As a result of the concealment of the facts set forth above, Cooley sustained injuries including the loss of her life.

99. Such negligent misrepresentation was gross negligence in that Defendant's misrepresentation was made in a wanton and reckless fashion considering the failure to produce photo-documentation of the cecum, and the foreseeable damage resulting to Cooley as a result of such misrepresentation.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III for fair and reasonable damages, for prejudgment interest, punitive damages, and for their costs and for such other relief as is just and proper.

## **PRAYER FOR RELIEF**

Plaintiffs requests judgment in their favor and against Defendant, for damages for fees and other expenses, plus punitive damages to the greatest extent allowed by law, as well as any other relief the Court deems just and appropriate.

**\*\* Pursuant to R.S.Mo. § 538.225, which controls due to Decedent's being a Missouri citizen at the time of death, Counsel for Plaintiffs has filed herewith an Affidavit of Merit regarding Plaintiffs' claims of Negligence and Wrongful Death against a Healthcare Provider. <u>Exhibit A.</u> – Although the Affidavit bears a heading designating it for use in Franklin County, Missouri (where this matter originally was filed), it otherwise meets all requirements of R.S.Mo. § 538.225 to be sufficient herein.  Also attached hereto as <u>Exhibit B</u> is the corresponding Letter of Merit and, as <u>Exhibit C,</u> the Healthcare Provider's Curriculum Vitae.**

Respectfully submitted,

*/s/ Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
314-550-3717
dharvath@harvathlawgroup.com